IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | NO. 04-10299-PBS |
| **RICARDO ESTRADA** ) | |
| ) | |

**UNITED STATES' OPPOSITION TO
DEFENDANT'S MOTION TO REVOKE ORDER OF DETENTION**

**I.   Introduction**

The United States respectfully opposes the motion of defendant RICARDO ESTRADA ("ESTRADA") that this Court revoke Chief Magistrate Judge Swartwood's order of detention. As further described below, the Chief Magistrate Judge's finding that ESTRADA is a risk of flight is supported by the record. Although defendant correctly points out that the order of detention incorrectly states that the defendant was identified as being intercepted on the Title III wire interceptions, this fact has no bearing on the court's risk of flight finding. Furthermore, there is substantial evidence that on May 1, 2004, defendant was responsible for delivering approximately 50 kilograms of cocaine to other members of the charged conspiracy. Finally, defendant has failed to rebut the applicable presumption of 18 U.S.C. § 3142(e).

**II.   Procedural Background**

On May 1, 2004, ESTRADA was arrested along with twenty-one other defendants. On May 3, 2004, ESTRADA and three other defendants (Luciano, Aguilar, and Solorio)

were charged in a criminal complaint following the seizure of approximately fifty (50) kilograms of cocaine in Danvers, MA on May 1, 2004. (See Docket No. 1, Criminal Complaint). On June 21, 2004, Chief Magistrate Swartwood held a detention hearing as to ESTRADA and heard the testimony of DEA Special Agent Jean Drouin. For the most part, Agent Drouin adopted his affidavit in support of the criminal complaint as his testimony in support of probable cause and detention. (See Docket No. 2, Affidavit of Special Agent Jean Drouin)  On June 23, 2004, the Chief Magistrate entered an order of detention for ESTRADA. (See Docket No. 20, June 23, 2004, Order of Detention as to Ricardo Estrada)

On July 2, 2004, ESTRADA filed a motion to reconsider the court's detention order and proposed conditions of release, (See Docket No. 21, Motion to Reconsider Order of Detention and Proposed Conditions of Release), which the Chief Magistrate denied on July 12, 2004. (See Electronic Order Entered on 7/12/04 Denying Motion for Reconsideration).

On September 29, 2004, ESTRADA was charged (along with Luciano, Aguilar, and Solorio) by indictment with conspiracy to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. § 846. On October 6, 2004, ESTRADA was charged in a superseding indictment along with twenty additional defendants with conspiracy to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. § 846.

### III.  Factual Background

In January 2003, DEA began investigating a cocaine trafficking organization based in the North Shore area of Massachusetts. The investigation initially focused on the cocaine trafficking activities of Jose Rosales, a.k.a. "Tony" in Peabody. On July 31, 2003, DEA

began intercepting wire communications over two of Rosales' cellular phones pursuant to a court authorized Title III wiretap. In August 2003, DEA began intercepting the cellular telephone calls of not only Rosales, but also other members of the organization including Valentin Martinez, a.k.a. "Vale," Rogelio Garcia, and Manuel Germosen, a.k.a "Kelvin Madera," a.k.a. "Manolo." These wire interceptions revealed evidence of an ongoing cocaine distribution organization that was obtaining multi-kilogram amounts of cocaine from Mexico and distributing the cocaine to a broad customer base in Lynn and other North Shore towns in MA.

By early 2004, the leader of this organization, Andres Martinez, a.k.a. "Saicada," returned to MA from Mexico after nearly a two year absence. On February 20, 2004, DEA began intercepting one of Martinez's cellular telephones. On April 28, 2004, DEA began intercepting a second cellular telephone used by Martinez. Based primarily on these interceptions of Martinez' cellular phones, it became apparent that Martinez was coordinating a large shipment of cocaine from an individual in Mexico known only as "the nephew."

On April 30, 2004, Martinez was intercepted speaking with "the nephew" about the final arrangements for the delivery of the cocaine to Martinez in MA. In one intercepted call, "the nephew" asked Martinez for a telephone number that he (the nephew) could give to the people who would be delivering the cocaine. Martinez gave "the nephew" (in numeric code) telephone number 978-223-0838, a telephone number that was not the subject of a Title III wiretap.

The next day, on May 1, 2004, at around 6:40 a.m., DEA agents using video surveillance outside Martinez's residence at 172 Lake Street, Peabody, MA observed Martinez and two other males, Roberto Solorio and Daniel Aguilar, depart the residence in two vehicles. Agents followed Solorio and Aguilar (driving in a yellow Cadillac sedan), and Martinez (driving in a silver Ford truck) drive from 172 Lake Street to the Countryside Motel in Peabody a short distance away. Agents watched as Aguilar and Solorio walked into the motel's office.

According to hotel records, at 6:56 a.m., Aguilar checked into to Room #19. Also according to hotel records, hour before at 1:00 a.m. on May 1, 2004, defendant RICARDO ESTRADA checked into Room # 21 at the same motel. Agents also observed three different 18 wheeler trucks parked in the motel parking lot. Agents then observed Solorio get into the passenger side of Martinez's silver Ford truck and depart the area with Martinez.

Minutes later, at 7:08 a.m., Martinez called Aguilar from telephone number 978-223-0838 (the same number that Martinez provided to "the nephew" in Mexico). At the time, Aguilar was using Martinez's cell phone, (323) 834-4640 (target telephone no. 21). In the intercepted conversation, Martinez told Aguilar (speaking in coded language) that someone would be knocking at the hotel door to deliver his clothes that had been "washed."

Two minutes later at 7:10 a.m., surveillance units in place at the Country Side Motel observed an unknown Hispanic male wearing blue jeans and a black T-shirt, later identified as RICARDO ESTRADA, walking from the cab of one of the 18 wheeler trucks and pulling behind him, on wheels, a large black suitcase. The suitcase appeared to be heavy and

4

ESTRADA was observed looking in all directions as he walked with the suitcase from the parking lot and entered Room #21.

At around 8:30 a.m., agents conducting surveillance at the Countryside Motel watched Aguilar get into the his yellow Cadillac sedan and back up to the doorway of Room #21, ESTRADA's room. Around the same time, agents observed ESTRADA standing in front of Room #21 talking on a cell phone. Aguilar walked past ESTRADA into Room #21 and walked out with two black suitcases similar in size, shape, and color to the suitcase ESTRADA was observed carrying into Room #21. Aguilar put the two black suitcases into the truck of yellow Cadillac and drove off.

Following this exchange, agents followed the yellow Cadillac to 6 Endicott Street in Danvers, MA, another residence which Martinez used. Upon arrival at 6 Endicott Street, Aguilar called Martinez and told him that he had the "clothes." At around 9:00 a.m., agents entered 6 Endicott Street and detained Aguilar, Solorio, and Martinez in the residence. On the living room floor, agents found the two black suitcases unzipped. Inside the suitcase, agents found and seized approximately fifty (50) kilograms of cocaine.

Following the arrest of Aguilar, Solorio and Martinez at 6 Endicott Street, agents detained ESTRADA as he attempted to drive off in the 18 wheeler truck in the parking lot of the Countryside Motel. Law enforcement agents searched the cab of the 18 wheeler and found a piece of paper with a handwritten telephone number, 978 223-0838 - the <u>same</u> phone number that Martinez recited to "the Nephew" (in code) on April 30, 2004 and which "the Nephew" said he would give his associate so that Martinez and the associate could speak

directly about delivery of the drug load.

### IV.  The Court's June 23, 2004 Order of Detention

The court first ruled that since legislative presumption of 18 U.S.C. § 3142(e) applied, ESTRADA was presumed to be both a danger to the community and a risk of flight. The court also found that defendant had failed to produce or proffer any credible evidence to rebut this legislative presumption.

In addition to the presumption, the court furthermore specifically found, contrary to defendant's assertions, that ESTRADA was a risk of flight. (See Docket No. 20 at 10, June 23, 2004, Order of Detention as to Ricardo Estrada). Specifically, the court stated: "Therefore, considering the totality of the circumstances, I find by a preponderance that there are no conditions or combination of conditions that I can impose that would assure Mr. Estrada's appearance in Court as directed." Id. The court reasoned ESTRADA was a resident alien who if found guilty faces a substantial period of incarceration and certain deportation. Id. at 9. The court also reasoned that ESTRADA has family ties to Mexico and for the past seven or eight years has lacked a permanent address. Id.

While the court declined to find that defendant posed a danger to the community, the court did find that ESTRADA was observed by law enforcement officials delivering suitcases to members of conspiracy in Peabody, MA which were later found to contain fifty (50) kilograms of cocaine. (See Docket No. 20 at 7). Defendant does however correctly point out that ESTRADA has not been identified as having been personally intercepted during the course of the Title III intercepts in this case.

V. <u>**Argument**</u>

A. **Review Under 18 U.S.C. § 3145(b)**

A person who is ordered detained by a magistrate judge may seek revocation or amendment of the order from "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). A district judge must conduct a "de novo review" of a contested detention order, but it need not conduct a de novo hearing. <u>United States v. Tortora</u>, 922 F.2d 880, 883, n.4 (1st Cir. 1990); <u>see</u> <u>United States v. Phillips</u>, 732 F.Supp. 255, 259 (D.Mass. 1990). On the contrary, the district judge may take the magistrate judge's fact-finding as his or her starting point and hear additional facts and argument only if he or she sees fit. <u>Id.</u>

B. **The Re-buttable Presumption Under 18 U.S.C. § 3142(e)**

A grand jury indictment provides probable cause to believe that a defendant has committed an offense for which he may receive a sentence of imprisonment for ten or more years for violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq. <u>United States v. Dillon</u>, 938 F.2d 1412, 1416 (1st Cir. 1990); <u>see</u> <u>United States v. Vargas</u>, 804 F.2d 157, 163 (1st Cir.1986). As a result, under § 3142(e), "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community...." 18 U.S.C. § 3142(e). A defendant must produce only "some evidence" to rebut this presumption. <u>United States v. Jessup</u>, 757 F.2d 378, 384 (1st Cir.1985). When a defendant produces such evidence, however, the presumption does not disappear. <u>Dillon</u> 938 F.2d at 1416. The burden of persuasion remains on the government and the rebutted presumption retains

7

evidentiary weight. Id.; United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir.1987) (per curiam ).

**C.    Defendant Remains a Risk of Flight**

The court reasoned that ESTRADA is a risk of pre-trial flight for the following reasons.  First, ESTRADA faces a substantial period of incarceration -  at least a ten year mandatory minimum sentence  -  and certain deportation following conviction.  Second, ESTRADA has no ties to the community.  For the past seven to eight years, ESTRADA has lived in his tractor and maintained various mailing addresses in Southern California.  Third, ESTRADA has significant ties in Mexico.   The court reasoned that even though ESTRADA's children reside in Southern California and are U.S. Citizens, it would not be difficult for them to travel a few miles across the border to Mexico.

This Court should not disturb these reasons on appeal.  Chief Magistrate Judge Swartwood had the opportunity to hear the government's evidence (subject to cross examination) for not just ESTRADA, but also the other twenty-one defendant who are charged in the pending indictment.  Therefore, this court should give substantial deference to the Magistrate Judge's findings.  Moreover, the court's finding that defendant is a risk of flight was in addition to the court's finding that the presumption under § 3142(e) applied. The court made this further finding of risk of flight for the "sake of completeness."  (See Docket No. 20 at 8).

Furthermore, while the court declined to find that the government had failed to prove by clear and convincing evidence that ESTRADA is a danger to the community, this fact has

8

no bearing on the finding that ESTRADA is a risk of flight. This finding was also in addition the court's finding that defendant is presumed to be a danger to the community under § 3142(e).

Finally, defendant correctly points out that he has not been identified as having been personally intercepted during the course of the Title III intercepts. This fact, however, has no bearing on the court's finding that defendant is a danger to the community. This fact also does not address the court's finding that ESTRADA was observed delivering two large black suitcases to members of the conspiracy which were later found to contain fifty (50) kilograms of cocaine. (See Docket No. 20 at 7)

## Conclusion

For all of the foregoing reasons, defendant RICARDO ESTRADA's motion to revoke the order of pretrial detention should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

|  |  |
|---|---|
| By: | /s/ Neil J. Gallagher, Jr. |
|  | Neil J. Gallagher, Jr. |
|  | Assistant U.S. Attorney |
|  | One Courthouse Way |
|  | Boston, MA |
|  | (617) 748-3397 |

Dated: February 22, 2005